

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00750-CR

Larry **CASTRO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR0307A
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
    Marialyn Barnard, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  October 8, 2014

AFFIRMED

A jury found appellant, Larry Castro, guilty of murder, and assessed punishment at twenty-two years' confinement.  On appeal, appellant asserts the trial court erred (1) by denying him a lesser-included offense instruction in the jury charge; (2) when it overruled his objection to the State's improper closing argument; (3) when it overruled his objection to the State's misstatement of the law regarding self-defense during its closing arguments; and (4) when it failed to grant his motion for a mistrial after the State shifted the burden of proof regarding self-defense during its closing argument.  We affirm.

**BACKGROUND**

Appellant was charged with the murder of Juan Romero by striking and kicking him to death. Appellant and Romero were members of the same pool league and had known each for approximately six years. On October 15, 2012, appellant and Romero were playing pool at Coach's Corner, a bar where a pool tournament was being held. At approximately 9:45 p.m., Romero walked across the street to buy cigarettes from a convenience store and was followed by appellant, Bernardo Crisanto, and Jose Velez. Romero was confronted as he exited the store. When Romero attempted to re-enter the convenience store, appellant charged at Romero and threw him to the ground, where Romero was kicked repeatedly by the three men. Romero died at a hospital shortly thereafter.

At trial, appellant's defensive theory was that he acted in self-defense. According to appellant, during the time that he knew Romero, Romero told him that he stabbed several people and tried to kill his ex-wife's boyfriend by running him over with a car and shooting him. Additionally, three months prior to the night of Romero's death, Romero assaulted appellant with a cue stick and had since threatened to kill him. Appellant argued that his fear of Romero was reasonable based on his knowledge of Romero's past conduct and the threats Romero made toward him. The jury rejected appellant's self-defense theory and found him guilty of murder. This appeal ensued.

**LESSER-INCLUDED OFFENSE INSTRUCTION**

The jury charge included instructions on the law of parties and self-defense. In his first issue, appellant asserts he was also entitled to an instruction on the lesser-included offense of manslaughter.

**1. Applicable Law**

The determination of whether the trial court should give a lesser-included offense instruction requested by a defendant requires a two-step analysis. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The court first determines whether the proof necessary to establish the charged offense also includes the lesser offense as a matter of law. *See id.* (stating first prong is a question of law and involves comparing elements in indictment with elements of lesser offense). An offense is a lesser-included offense if it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission. TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (West 2014).

If the first prong is established, the court then evaluates whether the trial evidence shows that if the defendant is guilty, he is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). A defendant is entitled to a lesser-included instruction in the jury charge, "if some evidence from any source raises a fact issue on whether he is guilty of only the lesser, regardless of whether the evidence is weak, impeached, or contradicted." *Cavazos*, 382 S.W.3d at 383. Evidence may indicate a defendant is guilty of only the lesser offense if it "refutes or negates other evidence establishing the greater offense," or if "the evidence presented regarding the defendant's awareness of the risk may be subject to two different interpretations, in which case the jury should be instructed on both inferences." *Id.* at 385. A defendant is entitled to an instruction on the lesser-included offense only if both prongs are met. *Guzman*, 188 S.W.3d at 189.

**2. Discussion**

The indictment in this case alleged that a person commits the offense of murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of the individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011). A

person commits manslaughter if he recklessly causes the death of a person. *Id*. § 19.04(a). A person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id*. § 6.03(c).

In this case, the State does not dispute that manslaughter constitutes a lesser-included offense of murder. *See Cavazos*, 382 S.W.3d at 384. The State argues, however, that there is no evidence in the record that would permit a rational jury to find that if appellant is guilty, he is guilty only of manslaughter. Appellant contends he was entitled to the manslaughter instruction because he acted recklessly and argues there is no evidence that he intended to cause Romero's death. We disagree with appellant.

During the trial, appellant denied that he intended to kill Romero. However, appellant admitted to repeatedly kicking Romero and testified that he understood kicking Romero would hurt him. In addition to appellant's own testimony that he intentionally and repeatedly kicked Romero, the State also introduced a video recording of the attack captured by the convenience store's surveillance system. In the recording, appellant's accomplices can be seen following Romero as he exited the store and confronting Romero outside the entrance to the store. Romero then attempts to walk away and re-enter the store. As Romero opens the door to re-enter the store, appellant charges at Romero, slamming the door shut and preventing Romero from re-entering. Appellant then grabs Romero by the neck and throws him to the ground. After Romero has been thrown to the ground, appellant and his accomplices can be seen repeatedly kicking Romero.

This evidence does not support an inference that appellant acted recklessly and does not rise to the level that would allow a rational jury to find that appellant is guilty of only manslaughter. *See Cavazos*, 382 S.W.3d at 385; *Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002) (holding a defendant's self-serving statement that he did not intend to kill "does not amount to

evidence which a jury could rationally find appellant *only* acted recklessly with respect to killing [the victim], and not intentionally") (emphasis in original); *see also Orona v. State*, 341 S.W.3d 452, 461 (Tex. App.—Fort Worth 2011, pet. ref'd) (holding specific intent to kill may be inferred from kicking a victim); *Valenzuela v. State*, No. 11-11-00336-CR, 2013 WL 3203685, at *3 (Tex. App.—Eastland June 20, 2013, pet. ref'd) (mem. op., not designated for publication) ("Throwing someone to the ground [and] repeatedly kicking them . . . and doing nothing to assist the victim does not rationally support an inference that [a defendant] acted recklessly . . . ."). Thus, the evidence in this case was sufficient for the jury to conclude that appellant intended to cause serious bodily injury to Romero and committed an act clearly dangerous to human life. Accordingly, we conclude the trial court did not err by refusing to instruct the jury on manslaughter.

## IMPROPER JURY ARGUMENT

### A. Facts Not in Evidence

In his second issue, appellant asserts the State improperly injected facts not in evidence. He contends the trial court erred by denying his request for a mistrial and overruling his objection to the following portion of the State's jury argument:

> State: Now, let me ask you, if the defendant was so scared of Romero, then why would he not continue on to contact—to contact law enforcement? Ladies and gentlemen, we have rules, we have laws for specific reasons. For serious reasons like this.

> Defense: Your Honor, I'm going to object to [the State's] testimony. It's evidence outside the record. It's improper. It's not a reasonable [deduction] from the evidence and we object on that.

> The Court: Sustained.

> State: Judge, I'll move on.

> Defense: Your Honor, I'm going to ask for an instruction for the jury to disregard [the State's] comments.

> Court: The jury is to disregard the last comments made by the prosecutor.

Defense: Your Honor, I'll move for a mistrial.

Court: Denied.

State: Now . . . the [appellant], he called the police before. He called the police three months prior to this event. So he had the capable means and wherewithal to contact law enforcement if threats were [] being made or if he felt like he—

Defense: Your Honor, again, [the State is] going right back to the same argument that [it] was prohibited from going into. I'm going to object on that.

Court: This is overruled. Based on what [the State] is saying.
. . . .

We review a trial court's ruling on an objection to a jury argument under an abuse of discretion standard. *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd). In examining challenges to a jury argument, a court considers the remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). Proper jury argument may include: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). However, argument outside one of these general areas is not reversible error unless, in light of the record as a whole, "the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The remarks must have been a willful and calculated effort on the part of the State to deprive a defendant of a fair and impartial trial. *Id*. An instruction to disregard will generally cure error. *Id*.

It was improper for the State to invite the jury to speculate on facts not in evidence. However, the State's argument that if appellant "was so scared of Romero, why would he not continue . . . to contact law enforcement," was immediately followed by an objection and an

instruction from the trial court for the jury to disregard the argument. Such instructions to disregard are presumed to have been complied with by the jury. *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011). Here, the first argument was not so extreme that the trial court's instruction to disregard was ineffective. *See Martinez v. State*, 17 S.W.3d 677, 691 (Tex. Crim. App. 2000) (prosecutor argument that "spurned lovers kill the other person, particularly, when they come in and, perhaps, see her with another person" not so extreme as to render instruction to disregard ineffective); *Wesbrook*, 29 S.W.3d at 115–16 (prosecutor argument that defendant gave two different stories, one to jury and another to police that was never entered into evidence "not so flagrant that the instruction to disregard was ineffective"); *Sanchez v. State*, No. 04-05-00766-CR, 2006 WL 3204900, at *3 (Tex. App.—San Antonio Nov. 9, 2006, no pet.) (mem. op., not designated for publication) (prosecutor argument that defendant "had a dead body in his car," did not render instruction to disregard ineffective). Therefore, we conclude that the trial court's instruction to disregard the State's first argument cured any error.

Appellant also complains the trial court erred by overruling his objection to the State's second argument that he called police three months before the night of Romero's death and had the ability to contact police again if Romero continued threatening him. Before the State stated its argument in its entirety, defense counsel lodged an objection, which the trial court overruled. After the trial court overruled the objection, no further reference was made by the State regarding this topic.

During the trial, appellant testified that he was assaulted by Romero on July 21, 2012, approximately three months before Romero was killed. Appellant also testified that he contacted the police to report the incident. The State's second argument summarized evidence already admitted, that appellant had previously contacted police, and made a reasonable deduction that

appellant had the ability to do so again. Thus, we conclude the trial court did not abuse its discretion in overruling appellant's objection to the State's second argument.

## B. Burden of Proof

In issues three and four, appellant asserts the trial court erred by overruling his objection and denying his motion for mistrial because the State's jury argument misstated the law and improperly shifted the burden of proof regarding self-defense. Appellant complains of the following jury argument:

> State: Self-defense. When they talk about the justification of self-defense. And if you remember anything I say at all . . . it's this, self-defense justification depends on the defendant having a reasonable belief that it was imminently necessary to protect himself against the other's use of deadly force. Reasonable belief is not just what he had in his mind. It's an objective and subjective standard. It means he must believe it and it means an ordinary and prudent person standing in his shoes faced with those same circumstances would have to believe it. Okay. Not just his belief.
>
> Although I suggest to you that the evidence doesn't show that he even believed he was in danger, but an ordinary and prudent person standing in his shoes would have to believe it as well for him to get the benefit of that justification.
>
> Ladies and gentlemen, watch that tape if you need to. And watch it over and over again. And you should tell me, and you identify for the other jurors what provoking conduct [Romero] does, that called him to get that—to get that—
>
> The Court: I'm sorry, we can't hear you.
>
> Defense: Judge, he's misstating the law. We don't have to establish provocation, we have to establish reasonable belief, Your Honor. And he's misstated the law and I object to that.
>
> The Court: Overruled. Continue please.
>
> State: You look at that, if you need to, frame by frame. And you look at it at any point, and you reflect on the testimony as well that [Romero], did anything to provoke him that night that deserved—that made it imminently necessary for this man to take his life.
>
> Defense: Your Honor, again, I'm going to object. That's—
>
> The Court: Ladies and gentlemen, you will read that charge and understand the law from the charge. What the prosecutor is saying, what anyone says in this court other

than the law that's given to you in the charge is not the law or the evidence. Please continue.

Defense: Your Honor, because the prosecutor is trying to misdirect the jury on their burden I'm going to ask for a mistrial.

The Court: Denied.

State: The charge says as I said, that you must find that it was imminent that the defendant reasonably believed that it was imminently necessary to protect himself against [Romero's] unlawful use of deadly force . . . . Imminently necessary to protect himself against the unlawful use of force against him. Deadly force. It doesn't exist.

. . . .

Appellant asserts the State's argument required him to show that he was provoked in order to establish that he acted in self-defense. Thus, he contends the argument improperly shifted the State's burden to disprove the defense beyond a reasonable doubt.

A defendant has the initial burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once evidence is produced, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). This burden of persuasion does not require the State to produce evidence to refute the self-defense claim, but requires only that it prove its case beyond a reasonable doubt. *Id.*

In order for deadly force in defense of a person to be justified, a person must reasonably believe that deadly force is *immediately necessary* to protect against another person's use of deadly force. *See* TEX. PENAL CODE § 9.32(a) (emphasis added). In its jury argument, the State argued that "provoking conduct" by Romero did not exist, and urged the jury to review the recording to look for evidence supporting appellant's defensive theory that he reasonably believed the use of deadly force was immediately necessary to protect himself. In other words, the State argued that the recording did not show that appellant's use of deadly force was *immediately necessary* because

Romero was not attempting to use deadly force against appellant. When read in the context of the record as a whole, the State's argument summarized the events captured on the recording as well as testimony presented at trial, and challenged appellant's defensive theory that his use of deadly force was immediately necessary. Thus, the State's argument was not a misstatement of law and did not improperly shift the State's burden to disprove the defense beyond a reasonable doubt. *Cf. Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990) (finding error in State's repeated and deliberate misstatements that jury should not require the State to prove anything beyond the elements of the offense—shifting State's burden to disprove defense beyond a reasonable doubt); *Burke v. State*, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983) (prosecutor statement that the law "tells you before you take another person's life you're going to have to be willing to take a beating . . . not only erroneous but was so manifestly improper, under the circumstances, to require the reversal of judgment"). Accordingly, we conclude the trial court did not abuse its discretion in overruling appellant's objection and denying his motion for mistrial.

## CONCLUSION

We conclude the trial court did not err by refusing to instruct the jury on manslaughter, and the trial court's instruction to disregard the State's improper jury argument cured any error. We further conclude the trial court did not abuse its discretion in overruling appellant's objection and denying his motion for mistrial to an improper jury argument. Therefore, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish